# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 19, 2012        Decided March 12, 2013

No. 11-3049

UNITED STATES OF AMERICA,
APPELLEE

v.

JOSEPH L. BLACKSON, ALSO KNOWN AS JOE BLACK,
APPELLANT

———

Consolidated with 11-3063

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:04-cr-00128-RMC-3)

———

*Richard K. Gilbert*, appointed by the court, argued the cause and filed the briefs for appellant.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III, John P. Dominguez*, and *Katherine M. Kelly*, Assistant U.S. Attorneys, were on the brief for appellee. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, BROWN, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  Joseph Blackson challenges the district court's decision to reimpose a 360-month sentence for numerous narcotics- and firearms-related convictions after this court vacated one of the convictions upon which his original sentence was based.  Blackson argues that the district court took an overly narrow view of the scope of issues it could consider at his resentencing.  Because we find that the district court correctly understood its authority on remand, we uphold Blackson's sentence.  We also take the opportunity to collect and restate this circuit's rules regarding which arguments the district court may consider on a remand for resentencing when the remand order provides no express instructions.

I

In March 2004, Blackson and thirty-eight others were arrested for their participation in the "M Street Crew," a drug ring operating in Northeast Washington, D.C.  The government brought federal criminal charges against nineteen participants, including Blackson.  Blackson and four other members of the Crew were tried together.   Following the trial, the jury convicted Blackson on one count of conspiracy to distribute and possess with intent to distribute narcotics, one count of conspiracy to participate in a racketeer influenced corrupt organization, eleven counts of distributing phencyclidine (PCP), two counts of possessing with intent to distribute the drug "ecstasy," and two firearms-related offenses.  The jury did not find Blackson guilty of one additional count of PCP distribution (Count 31), which the government conceded it had failed to

prove.  In fact, Count 31 did not even appear on the verdict form submitted to the jury.  Nonetheless, in what the government later acknowledged was a clerical error,  Blackson's district court judgment showed that he had been convicted on Count 31.

Following the jury verdict, the district court sentenced Blackson to concurrent 360-month terms of incarceration for all of the counts relevant here, including Count 31.  The sentence included an enhancement for playing a managerial role in the drug ring, pursuant to United States Sentencing Guideline § 3B1.1(b).

Blackson and his co-defendants appealed their convictions and sentences to a panel of this court.  *See United States v. Wilson*, 605 F.3d 985, 1002-03 (D.C. Cir. 2010). Blackson raised two challenges relevant to this case.  First, Blackson asked the court to find that the district court had abused its discretion by applying the managerial role enhancement.  This court found, however, that the district court "had a sufficient basis to conclude that Blackson was a manager/supervisor" in the M Street Crew, although some evidence adduced at trial "might have tended to show that Blackson was at the bottom level of the conspiracy."  *Id.* at 1039.

Blackson had more success with his second challenge, which was to the inclusion of Count 31 in the district court's judgment. This court found that the judgment erroneously listed Count 31 as a conviction and that the error affected Blackson's substantial rights because it "may have affected [his] sentence." *Id.* at 1032.  The court "therefore reverse[d] Blackson's conviction on Count 31 and remand[ed] for resentencing."  *Id.* Because the language of the panel's remand order is relevant to this case, we quote it here in full:

> For the foregoing reasons, except for Blackson's judgment as to Count 31, we affirm the district court's judgments. We vacate Blackson's judgment on Count 31 and remand to the district court for further proceedings consistent with this opinion.

*Id.* at 1039.

At Blackson's resentencing hearing, the defendant and the government presented the district court with contrary views regarding the scope of issues the court could consider on resentencing. Citing Sixth Circuit cases authorizing de novo resentencing after remand, Blackson urged the court to weigh anew all of the sentencing factors listed in 18 U.S.C. § 3553(a). Def.'s Mem. in Aid of Resentencing at 2 (J.A. 37) (citing *United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)). Specifically, Blackson asked the district court to reconsider the managerial role enhancement that this court had sustained. He also asked for a downward variance from the Sentencing Guidelines for his willingness to testify for the defense at the trial of his former associate, Larry Gooch, which took place after his own initial sentencing. The government disputed both the defendant's general characterization of the district court's remand authority as "de novo" and the specific contention that the district court had authority to reconsider the enhancement and consider the testimony. *See* Resentencing Hr'g Tr. at 12-13 (May 6, 2011). In the government's view, the remand was "ministerial," *id.* at 10, meaning that the trial court was only authorized to decide what Count 31 "meant in the entire sentencing scheme" and "what the sentence would have been if

the trial court had [realized] that Count 31 was not a Count of conviction," *id.* at 11.[1]

After listening to each side's arguments at the resentencing hearing, the district judge said that she "really wanted to reconsider this in full," *id.* at 16, notwithstanding that the original 360-month sentence "was formulated specifically with Mr. Blackson in mind," *id.* at 15. But after considering "what I had the flexibility to do and then what I thought I should do if I had the flexibility," *id.* at 16, the judge concluded:

> [G]iven the number of counts and the complexity of this all with the multiple defendants and the multiple counts and everything, the Circuit did not want to presume how this Count improperly included in the judgment might have influenced the judgment and without it might some way fall and so they sent it back for that purpose alone . . . . to that extent I accept the ministerial point made by the Government.

*Id.* at 17. Regarding Blackson's managerial role enhancement, the judge said that, "even if I wanted to reconsider it[,] I don't think I can." *Id.* at 18. Finally, as to Blackson's testimony at the Gooch trial, the court found:

> I don't even have to go there to find that the testimony whether admirable, honorable or . . . perjurious,

---

[1] The government's sentencing memorandum also suggested that, if the district court did consider Blackson's role in the Gooch trial, it should impose an "upwards departure for the perjury he committed while testifying on behalf of his M Street Crew member." Gov't Reply to Def.'s Mem. for De Novo Resentencing at 3 (J.A. 48).

> whatever it was, I don't think it has an impact on how I should consider sentencing for the crimes for which Mr. Blackson was convicted beyond a reasonable doubt by a jury after hearing months and months of evidence.

*Id.* at 19.

Thereafter, the district court reimposed the original 360-month sentence, reasoning that vacated Count 31 "really was just an additional Count but it carried no independent weight as to the sentences." *Id.*; *see also* Am. Judgment at 3 (J.A. 27). Blackson now appeals, contending that the district court took an overly narrow view of the scope of issues it could consider on remand.

## II

We begin by collecting in one place this circuit's rules regarding the scope of a district court's resentencing authority under a remand order that, like the order in this case, contains no express instructions regarding which issues the district court may consider.

First, as we said in *United States v. Lyons* and reaffirmed in *United States v. Whren*, when this court vacates one count of a multi-count conviction, the district court on remand should begin by determining whether that count affected the overall sentence and, if so, should reconsider the original sentence it imposed. *Lyons*, 706 F.2d 321, 335 n.25 (D.C. Cir. 1983); *Whren*, 111 F.3d 956, 958 (D.C. Cir. 1997). Second, under *Whren*, the district court may also consider "such new arguments or new facts as are made newly relevant by the court of appeals' decision -- whether by the reasoning or by the

result." 111 F.3d at 960. Third, the district court is further authorized to consider facts that did not exist at the time of the original sentencing: for example, in *United States v. Rhodes* we held that the district court could consider rehabilitation efforts that the defendant had undertaken since receiving his original sentence. 145 F.3d 1375, 1377-78 (D.C. Cir. 1998); *see also Whren*, 111 F.3d at 960 ("A defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing.").

Beyond these three categories of inquiry, however, the district court does not generally have authority to consider other objections at resentencing -- unless the remanding court has expressly directed otherwise. *See Whren*, 111 F.3d at 958-60.[2] Accordingly, unlike the rule in some circuits, in this circuit the district court generally does not have authority to resentence a defendant de novo. *Id.* at 959-60 (rejecting the de novo approach to resentencing followed by several other circuits, including the Sixth).

---

[2] *Whren* recognized one important caveat: "under Federal Rule of Criminal Procedure 52(b) the resentencing court may consider even an issue raised belatedly" if it constitutes plain error. 111 F.3d at 960. Since *Whren*, we have also held that the resentencing court may consider arguments not raised at the original sentencing when the argument's relevance to the sentence was contingent on a circumstance that did not materialize at the original sentencing but that did come to pass by the time resentencing occurred, and where the defendant establishes good cause for not having raised the argument sooner. *United States v. McCoy*, 313 F.3d 561, 561-62 (D.C. Cir. 2002) (en banc). Neither of these circumstances is presented in this case.

Blackson maintains that our decision in *Whren* is "of questionable validity" after the Supreme Court's subsequent decision in *Pepper v. United States*, 131 S. Ct. 1229 (2011), and that district courts may now undertake de novo reconsideration upon almost all sentencing remands. Appellant's Br. at 22; *see* Oral Arg. Recording at 4:27 - 4:45. We disagree.

*Pepper* stands for several propositions, none of which conflict with our circuit's caselaw. In *Pepper*, the Court held that, "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation." 131 S. Ct. at 1236. This holding should sound familiar because, as noted above, we reached the same conclusion thirteen years earlier in *Rhodes*. *See* 145 F.3d at 1377-78. Although only dicta, language in *Pepper* suggests that the resentencing court's authority extends not only to evidence of post-sentencing rehabilitation, but also to evidence of other "conduct since [the] initial sentencing." 131 S. Ct. at 1242; *see id.* at 1246-47, 1249. As the Court explained, such post-sentencing conduct "constitutes a critical part of the 'history and characteristics' of a defendant that Congress intended sentencing courts to consider." *Id.* at 1242 (quoting 18 U.S.C. § 3553(a)); *see id.* at 1246-47 ("[W]e see no general congressional policy . . . to preclude resentencing courts from considering postsentencing information"). We draw the same lesson from *Rhodes*, *see infra* Part III.3, and therefore find only support in *Pepper* on this point as well.

*Pepper* also made clear that the Supreme Court's instruction to district courts in *United States v. Booker* -- that they should "treat the [Sentencing] Guidelines as 'effectively advisory,'" 131 S. Ct. at 1241 (quoting *Booker*, 543 U.S. 220, 245 (2005)) -- extends to sentencing remands as well. *Id.* at 1243-46. Accordingly, the Court held that evidence of post-sentencing

rehabilitation "may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." *Id.* at 1236. Nothing in this circuit's caselaw is to the contrary.

Finally, *Pepper* held that, "because the Court of Appeals [in that case had] remanded for *de novo* resentencing," the district court "was not bound by the law of the case doctrine to apply the same . . . percent departure [from the Guidelines] that had been applied at [the defendant's] prior sentencing." *Id.* at 1251. Contrary to Blackson's suggestion, this holding does not mean that the district court in his case was authorized to reconsider his managerial enhancement notwithstanding that it did not involve a "new argument[] or new fact[] . . . made newly relevant by [our] decision" on his first appeal, as *Whren* requires. 111 F.3d at 960. This is so for the obvious reason that, unlike the Court of Appeals in *Pepper*, we did *not* remand for de novo resentencing.

To be sure, *Pepper* did note that "[a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." 131 S. Ct. at 1251 (internal quotation marks omitted). Hence, "[b]ecause a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence *may* vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. §3553(a)." *Id.* (internal quotation marks and citations omitted) (emphasis added). But this circuit accomplishes that end by permitting the district court to reconsider whether its "sentence on a valid conviction was influenced by a conviction on a separate count that is later overturned on appeal," not by permitting it to reconsider issues that were not "in any way related to this court's

vacatur of the [separate] count." *Whren*, 111 F.3d at 958 (internal quotation marks omitted). Nothing precludes an appellate court from limiting the scope of its remands in this way.[3] To the contrary, *Pepper* stated that it did not "mean to preclude courts of appeals from issuing limited remand orders, in appropriate cases, that may [even] render evidence of postsentencing rehabilitation irrelevant in light of the narrow purposes of the remand proceeding." 131 S. Ct. at 1249 n.17 (citing *United States v. Bernardo Sanchez*, 569 F.3d 995, 1000 (9th Cir. 2009)).[4]

In sum, *Pepper* does nothing to undermine this circuit's general resentencing rules. Accordingly, in the absence of specific remand instructions, the general rules set forth in *Lyons*, *Whren*, and *Rhodes* continue to define the scope of a district court's authority on remand. We now consider whether the district court properly applied those rules in this case.

---

[3] *See* 18 U.S.C. § 3742(f)(1) ("If the court of appeals determines that . . . the sentence was imposed in violation of law[,] . . . the court shall remand the case for further sentencing proceedings *with such instructions as the court considers appropriate*") (emphasis added); *id.* at 3742(g) ("A district court to which a case is remanded pursuant to subsection (f)(1) . . . shall resentence a defendant in accordance with section 3553 and *with such instructions as may be given by the court of appeals* . . . .") (emphasis added).

[4] In *Bernardo Sanchez*, the Ninth Circuit held that, when it ordered a remand limited to the question of whether the district court would have imposed the same sentence had it known *Booker* would render the Sentencing Guidelines advisory, the district court was not authorized to consider post-sentencing information. 569 F.3d at 1000.

III

For the following reasons, we conclude that the district court did correctly understand and follow this circuit's law at Blackson's resentencing.

1. This court's remand order in Blackson's first appeal was consistent with our general rule that, upon remand from an appellate decision overturning one of multiple separate convictions, the district court should examine the sentence it imposed to determine whether it was influenced by the vacated count. *Lyons*, 706 F.2d at 335 n.25. In Blackson's first appeal, we held that the judgment erroneously listed a conviction on Count 31 *and* that this error affected the defendant's substantial rights because it "may have affected Blackson's sentence." *Wilson*, 605 F.3d at 1032. We "*therefore* reverse[d] Blackson's conviction on Count 31 and remand[ed] *for resentencing*." *Id.* (emphasis added). If we had not expected the district court on remand to consider whether and how Count 31 affected the original sentence, there would have been no need to remand for resentencing at all; we could simply have directed the court to vacate the count without touching the sentence. Instead, we "vacate[d] Blackson's judgment on Count 31 and remand[ed] to the district court *for further proceedings consistent with this opinion*." *Id.* at 1039 (emphasis added). Moreover, if the district court had merely reimposed the original sentence without considering the effect of Count 31, we would be back where we started: we would have no way of knowing whether the erroneous conviction actually affected Blackson's sentence, and hence no way of knowing whether his substantial rights had been violated.

Blackson maintains that the district court did not understand that its authority extended at least this far, but rather thought that

it could do no more than vacate Count 31 and its associated sentence. That is incorrect. Although the court "accept[ed] the ministerial point" advanced by the government, it did so "to th[e] extent" that it recognized it should not only vacate Count 31 but also consider whether that count "might have influenced" the overall sentence. Resentencing Hr'g Tr. at 17. The court then properly proceeded to evaluate whether Count 31 affected the overall sentence. Unfortunately for Blackson, the court concluded that it "really was just an additional Count" that "carried no independent weight." *Id.* at 19.

2. The district court also properly understood that it should not reconsider its original decision to give a Sentencing Guidelines enhancement for Blackson's managerial role in the M Street Crew. *See* Resentencing Hr'g Tr. at 18 ("I think that has been sustained on appeal. . . . I agree . . . that even if I wanted to reconsider it[,] I don't think I can."). On Blackson's first appeal, this court affirmed the district court's original decision that the enhancement was warranted. *Wilson*, 605 F.3d at 1038-39. We vacated the erroneous conviction on Count 31, however, and we remanded for resentencing *because* we could not determine whether the conviction on that count affected Blackson's overall sentence. *Id.* at 1032. In that context, our instruction that the case be "remand[ed] to the district court for further proceedings *consistent with this opinion*," *id.* at 1039 (emphasis added), cannot be read as specifically authorizing reconsideration of the enhancement that we had just affirmed -- let alone as authorizing an entirely de novo resentencing as Blackson insists.

As we have said, in the absence of more specific remand instructions, the general rules for resentencing set forth in *Lyons*, *Whren*, and *Rhodes* apply. Blackson's managerial role enhancement does not fall within any of them. He has not

suggested any way in which that particular sentencing enhancement could have been influenced by his overturned conviction on Count 31. *See Whren*, 111 F.3d at 958; *Lyons*, 706 F.2d at 335 n.25. Nor has he raised any other "new arguments or new facts . . . made newly relevant" by our decision on the first appeal. *Whren*, 111 F.3d at 960. Nor has he proffered any facts relevant to the enhancement that did not exist at the time of his original sentencing. *See Rhodes*, 145 F.3d at 1377-78. Moreover, Blackson's initial sentencing was conducted after *Booker* rendered the Guidelines advisory, and there is no indication (and no suggestion) that the district court failed to understand that point at either the sentencing or the resentencing. The court was therefore correct not to reopen the question of Blackson's managerial role. *See Whren*, 111 F.3d at 958-60.

3. Finally, and contrary to the government's argument on appeal, the district court was authorized to entertain Blackson's request to consider the fact that he voluntarily testified at Gooch's trial, which took place after Blackson's initial sentencing. *Rhodes* expressly permits a resentencing court to consider arguments based on facts that did not exist at the time of the initial sentencing. 145 F.3d at 1377-78 (rejecting the view that "*Whren* limits resentencing to facts existing at the time of original sentencing."). And there is no reason to distinguish new facts related to post-sentencing testimony from the new facts related to post-sentencing rehabilitation that were at issue in *Rhodes.* As noted above, at least in dicta *Pepper* also treats the two as the same.

The government contends that *Rhodes* is different from this case because the remand instruction in *Rhodes* invited the district court to consider a broader range of topics on resentencing. That is not correct. In the first *Rhodes* appeal, a

panel of this court reversed one of the defendant's three convictions and remanded for possible resentencing "taking into account the provisions of [Sentencing Guideline] § 2D1.1(b)(1)," which provides a sentencing enhancement if the defendant possessed a dangerous weapon. *United States v. Rhodes*, 106 F.3d 429, 433 (D.C. Cir. 1997). Notwithstanding that this language did not, by itself, invite consideration of the defendant's post-sentencing behavior, we held in the second *Rhodes* appeal that the district court was authorized to consider rehabilitation efforts undertaken by the defendant since receiving his initial sentence. 145 F.3d at 1377-78. There is no relevant difference between the *Rhodes* remand order, which directed that resentencing take into account one specific Guidelines enhancement, and the remand order in this case, which directed that resentencing take into account the effect that vacated Count 31 may have had on the original sentence. We therefore reject the government's contention that the remand order in this case renders the *Rhodes* rule inapplicable.

Nonetheless, although the government misunderstands *Rhodes*, the district court did not. The record shows that, at resentencing, the court *did* consider whether Blackson's willingness to testify for the defense at the subsequent trial of his friend should affect Blackson's own sentence. But -- again, unfortunately for Blackson -- the judge concluded that she "d[id not] think it has an impact on how I should consider sentencing for the crimes for which Mr. Blackson was convicted beyond a reasonable doubt by a jury after hearing months and months of evidence." Resentencing Hr'g Tr. at 19.

This conclusion was well within the district court's sentencing discretion. At oral argument on this appeal, Blackson suggested that we should demand a clearer statement from the district court that it knew it had authority to consider

his willingness to testify at the Gooch trial as part of his resentencing. But *Rhodes* indicated that a resentencing court may consider new facts that arise after a defendant's original sentencing, a point that *Pepper* underlined just two months before Blackson's resentencing. And the district court *did* consider such facts with respect to the Gooch testimony. Nothing more is required to demonstrate that the court understood the scope of its authority.

## IV

Because the district court neither misunderstood its authority nor erred in exercising that authority, the judgment of the district court is

*Affirmed.*