# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 5, 2018

Decided May 18, 2018

No. 17-3001

UNITED STATES OF AMERICA,
APPELLEE

v.

FREDERICK A. MILLER, ALSO KNOWN AS TOBY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cr-00379-2)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the briefs for appellant.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Patricia A. Heffernan*, Assistant U.S. Attorneys.

Before: PILLARD, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2006, Appellant Frederick Miller and 20 codefendants were charged in a 100-count indictment alleging a conspiracy to distribute heroin, cocaine, cocaine base, and phencyclidine ("PCP"). On June 19, 2006, a jury convicted Appellant of 21 counts of using a communication device to facilitate a drug-trafficking offense, acquitted him of PCP distribution and several counts of communications offenses, and hung on the remaining counts. Appellant was tried for a second time with respect to the counts on which the jury hung at the first trial. On November 15, 2006, following his second trial, a jury found Appellant guilty of narcotics conspiracy covering heroin, cocaine, and cocaine base, but not PCP; Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy; Continuing Criminal Enterprise ("CCE"); attempt to possess with intent to distribute heroin; and three counts of unlawful use of a communication facility. He was found not guilty of attempt to possess with intent to distribute PCP and five additional communications counts.

On November 28, 2007, the District Court sentenced Appellant on the counts of conviction from both trials. The court dismissed the narcotics conspiracy charge against Appellant as a lesser-included offense of CCE. The court then imposed concurrent sentences of life imprisonment for the RICO conspiracy and CCE, and lesser terms of imprisonment on the other counts.

On Appellant's appeal from the first trial, this court reversed six telephone count convictions and affirmed the convictions on the remaining counts. On Appellant's appeal from the second trial, this court vacated the CCE conviction for insufficiency of the evidence, reinstated the drug conspiracy conviction, vacated Appellant's sentence, and remanded for resentencing.

On December 20, 2016, following remand to the District Court, the Appellant was resentenced as follows: life imprisonment on the RICO conspiracy; 120 months on the drug conspiracy; 60 months on attempted possession with intent to distribute heroin; and 48 months each on 18 telephone counts. Appellant filed a timely notice of appeal on December 30, 2016.

Appellant now claims that the District Court erred in its consideration of the United States Sentencing Guidelines ("Guidelines") in imposing sentencing enhancements for his possession of a firearm and for serving as an organizer or leader of criminal activity; in determining the quantity of drugs used to calculate his base offense level in sentencing him on a count of narcotics conspiracy; and in imposing a life sentence on the RICO conspiracy count.

In response to Appellant's challenges, the Government presses two points. The Government argues,

> [f]irst, the claims are waived. Appellant did not challenge drug quantity or the district court's application of either [sentencing] adjustment in his initial appeal; these determinations became law of the case, and therefore appellant should not be permitted to litigate them now. Second, the district court was not authorized to reconsider the issues on resentencing because they are beyond the scope of this Court's remand.

Gov't Br. at 19. The Government's arguments confusingly conflate three theories: waiver; law of the case; and the rule that the District Court generally does not have authority to resentence a defendant de novo when this court vacates one

count of a multicount conviction. As we explain more fully in the analysis section of this opinion, the Government's arguments are seriously misguided.

Appellant had no reason to raise his present sentencing challenges during his initial appeal; therefore, he certainly did not "waive" these claims as the Government suggests. During his initial appeal, Appellant's looming mandatory life sentence for his CCE conviction rendered his present sentencing challenges fruitless. Given this situation, Appellant was not obliged to raise arguments on his first appeal that were merely contingently relevant. Once Appellant's initial appeal was successful in overturning the CCE conviction, however, his current sentencing challenges became relevant for the first time. Therefore, he gave up nothing during his first appeal.

After careful review of the record, we affirm in part, reverse in part, vacate in part, and remand the case for resentencing consistent with the following judgments. We hold that Appellant's challenges to the firearm and role-in-the-offense enhancements are meritorious because the District Court plainly erred in applying them. However, we hold that Appellant's challenge to the drug quantity determination fails because the District Court adequately explained its judgment and its findings are supported by the record. Finally, we vacate and remand the sentence on the RICO conspiracy count because the parties agree that the District Court erred in stating that the Guidelines range for the RICO conspiracy was life, when it was in fact 360 months to life.

## I. BACKGROUND

As noted above, Appellant and 20 codefendants were charged in a multicount indictment arising from a conspiracy to distribute heroin, cocaine, cocaine base (also known as

"crack"), and PCP. *United States v. Eiland*, 738 F.3d 338, 345 (D.C. Cir. 2013). On July 18, 2004 – after Appellant's arrest but before the alleged conspiracy ended in September 2004 – the Government executed a search warrant at his home and found firearms licensed to him, as well as a glass vial with the odor of PCP and several bottles of acetone, which can be used to dilute PCP. After the first trial, a jury convicted Appellant of 21 counts of using a communication device to facilitate a drug trafficking offense, acquitted him "of PCP distribution and several counts of communications offenses," and "hung on the remaining counts," resulting in a mistrial as to those. *Id.* Appellant was tried for a second time "with respect to the counts on which the jury hung at the first trial." *United States v. Miller*, 738 F.3d 361, 367 (D.C. Cir. 2013).

> At his second trial, Appellant
>
> was convicted of narcotics conspiracy (Count 1) with regard to heroin, cocaine, and cocaine base, but not with regard to PCP; RICO conspiracy (Count 2); CCE (Count 3); attempt to possess with intent to distribute heroin (Count 5); and three counts of unlawful use of a communication facility. The jury found Miller not guilty of attempt to possess with intent to distribute PCP and five additional communications counts.

*Eiland*, 738 F.3d at 346. Regarding the narcotics conspiracy count, the jury specifically found drug amounts for which Appellant was responsible, "including those drugs that he actually distributed or possessed with intent to distribute, and those drugs distributed or possessed with intent to distribute by co-conspirators which the defendant knew or reasonably could have foreseen would be distributed or possessed in furtherance of the conspiracy." Jury Verdict Form at 20, *United States v. Eiland* (No. 04-CR-00379) (Dec. 5, 2006), *available at*

Supplemental Appendix ("S.A.") 15. Those amounts were "1 kilogram or more of mixtures or substances containing a detectable amount of heroin," "5 kilograms or more of mixtures or substances containing a detectable amount of cocaine," and "5 grams or more but less than 50 grams of mixtures or substances containing a detectable amount of cocaine base." *Id.* at 21–22, S.A. 16–17.

Regarding the CCE count, the jury found that Appellant conspired to distribute and possess with intent to distribute mixtures or substances containing detectable amounts of heroin, cocaine, and cocaine base. The jury also found that the criminal enterprise was involved in the distribution of 30 kilograms or more of heroin and 15 kilograms or more of cocaine. Although the jury found Appellant guilty on Count Five, "attempt[ing] to possess with intent to distribute heroin," it did not make a specific finding regarding drug quantity. *Id.* at 39, S.A. 33.

The Presentence Investigation Report for the first trial ("2007 PSR") explained that, "[b]ased on the jury verdict, Frederick Miller was held accountable for at least 30 kilograms of heroin and at least 15 kilograms of cocaine." 2007 PSR at 11, *United States v. Miller* (No. CR-04-379-2) (Apr. 16, 2007). Using the "2006 edition of the Guidelines Manual, in conjunction with the May 2007 Supplement," the 2007 PSR grouped all of the counts under Guidelines § 3D1.2(d) because the offense level of each count was determined based upon "the quantity of a substance involved." *Id.* at 12. The PSR calculated the base offense level at 42 "because the offense involved at least 30 kilograms of heroin and at least 15 kilograms of cocaine," citing Guidelines § 2D1.1(a)(3) and (c)(1). *Id.*

The 2007 PSR increased the offense level two points under Guidelines § 2D1.1(b)(1) for "Specific Offense Characteristic:

A dangerous weapon (including a firearm[)] was possessed." *Id.* at 13. It awarded a four-point increase for "Role in the Offense" pursuant to Guidelines § 3B1.1(a). *Id.* Because the adjusted offense level, 48, was the result of the application of the Guidelines, and it was greater than an offense level of 43, the 2007 PSR treated the offense level as 43, pursuant to Guidelines Chapter 5, Part A, paragraph 2. The 2007 PSR calculated a criminal history category of I. A total offense level of 43 and a criminal history category of I resulted in a Guidelines range of life imprisonment. The statutory minimum sentence for the CCE conviction was life; both the narcotics conspiracy and the RICO conspiracy carried maximum terms of life imprisonment; and the unlawful-use-of-a-communications-facility counts carried maximum statutory terms of imprisonment of four years.

On November 28, 2007, the District Court sentenced Appellant on the counts of conviction from both trials. The court dismissed the narcotics conspiracy charge against Appellant as a lesser included offense of the CCE count. *Eiland*, 738 F.3d at 346. The District Court held that a two-offense-level increase was appropriate for possession of a firearm "even though it was legally obtained." Transcript of Sentencing at 3, *United States v. Miller* (No. CR-04-379-2) (Nov. 28, 2007), S.A. 3. It then imposed "concurrent sentences of life imprisonment for RICO conspiracy and CCE, and lesser terms of imprisonment on the other counts." *Eiland*, 738 F.3d at 346.

On appeal from the first trial, this court vacated various unlawful-use-of-a-communications-facility counts and affirmed the remaining counts. *Miller*, 738 F.3d at 387. On appeal from the second trial, this court concluded that, although sufficient evidence supported the narcotics conspiracy conviction, the evidence failed to establish that Appellant

organized or supervised five people as required for a CCE conviction. *Eiland*, 738 F.3d at 356–58. However, we affirmed and reinstated Appellant's conviction on Count 1 relating to narcotics conspiracy, vacated his sentence, and remanded the case for resentencing. *Id.* at 361.

The Probation Office issued a revised memorandum ("revised PSR") to assist the District Court at resentencing. Based on the 2015 version of the Guidelines, the base offense level was predicated upon the narcotics conspiracy count. Because Guidelines § 2D1.1(a)(5) and (c)(2) state that an offense involving at least 30 kilograms of heroin and 15 kilograms of cocaine resulted in a marijuana equivalent of 33,000 kilograms, the base offense level was set at 36. Again adding two points because "[a] dangerous weapon, specifically a firearm, was possessed" (Guidelines § 2D1.1(b)(1)), and four points for "Role in the Offense" pursuant to § 3B1.1(a), the revised PSR calculated the total offense level to be 42. Revised Re-Sentencing Report, *United States v. Miller* (No. CR-04-379-2) (June 16, 2016), *available at* Appellant's Appendix ("A.A.") 124. With a criminal history of I, the revised PSR determined that Appellant's Guidelines range of imprisonment was 360 months to life.

On December 20, 2016, the District Court resentenced Appellant as follows: (1) ten years on Count One, narcotics conspiracy; (2) life on Count Two, RICO conspiracy; (3) five years on Count Five, attempted possession with intent to distribute heroin; and (4) four years each on Counts Six, 16–18, 22, 24, 27, 28, 30, 33, 35, 36, 38, 39, 41, 43, 49, 52, and 53. In so doing, the District Court found that Appellant was responsible for the drug quantities underlying the vacated CCE conviction, *i.e.*, "30 kilograms of heroin, 15 kilograms of cocaine, and at least five grams of crack." Transcript of Sentencing Hearing at 8–10, *United States v. Miller* (No. CR-

04-379-2) (Dec. 20, 2016), A.A. 73–75. The District Court also applied a two-point firearm enhancement because, based on the evidence and witness testimony it had seen and heard, the court determined that Appellant "was in fact in possession of a firearm during this drug conspiracy." *Id.* at 10, A.A. 75. And, finally, the District Court applied a four-point role-in-the-offense enhancement because it found that Appellant "managed or supervised at least one participant who was criminally responsible for an offense in a criminal activity that involved five or more participants, or was otherwise extensive." *Id.* at 11, A.A. 76.

Appellant filed a timely notice of appeal on December 30, 2016.

## II.  ANALYSIS

### A.  *Standard of Review*

Under *Gall v. United States*, 552 U.S. 38 (2007), we review sentences in a two-step process pursuant to which procedural challenges are reviewed for an abuse of discretion. First, we must "ensure that the district court committed no significant procedural error such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 51. Next, if the District Court decision is procedurally sound, we then review it for substantive reasonableness, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." *Id.*

"When a defendant fails to raise objections at sentencing, we review only for plain error." *United States v. Mack*, 841 F.3d 514, 525 (D.C. Cir. 2016). "Under the plain error standard, we will correct a district court's error only if (1) there is in fact an error to correct; (2) the error is plain; (3) it affects substantial rights; and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mahdi*, 598 F.3d 883, 888 (D.C. Cir. 2010).

"[W]e review a sentencing court's factual determinations for clear error." *In re Sealed Case*, 552 F.3d 841, 849 (D.C. Cir. 2009).

## B. *Appellant's Sentencing Challenges*

### 1. *Stipulated Errors by the District Court*

The parties agree that the District Court erred when, at resentencing, it treated Appellant's Guidelines range for the RICO conspiracy count as life rather than 360 months to life. At the initial sentencing, Appellant's Guidelines range for the RICO conspiracy was life due to the mandatory life sentence on his CCE count. After our decision in *Eiland*, however, in which we vacated Appellant's CCE conviction and remanded the case for resentencing, the Guidelines range for Appellant's RICO conspiracy count fell to 360 months to life. We therefore vacate Appellant's life sentence on the RICO conspiracy count and remand to the District Court with instructions to resentence Appellant on the RICO conspiracy count in light of the correct Guidelines range of 360 months to life.

Because the District Court must reevaluate the RICO conspiracy sentence, we need not reach Appellant's argument that the now-vacated life sentence for that count was substantively unreasonable due to "erroneous factual assumptions" made by the District Court. Appellant's Br. 21–

22. Nor do we need to assess Appellant's claim that the District Court's resentencing decision was "in fatal conflict" with the court's 120-month sentence on the narcotics conspiracy count. *Id.* at 22.

The parties have also identified clerical errors in the District Court's written judgment regarding Counts Two and Five. The judgment erroneously states that Count Two charged CCE and that Count Five charged "Communications Facility Narcotic - Distribute." Judgment, *United States v. Miller* (No. CR-04-379-2) (Dec. 28, 2016), A.A. 86. But as the verdict form from the second trial establishes, those counts charged RICO conspiracy and attempted possession with intent to distribute heroin, respectively. On remand, the District Court will be required to correct the judgment to reflect the actual charges of conviction.

————————————

We now turn to the points of disagreement between the parties. The District Court's calculation of Appellant's new sentence incorporated sentencing adjustments for drug quantity, firearm possession, and Appellant's role in the offense. Appellant challenges these adjustments. The Government, in turn, argues that Appellant's challenges should not be heard for three reasons: they have been waived; they are barred by law of the case; and they are beyond the District Court's remit to resentence only insofar as the initial sentence was affected by the vacatur. We will consider the Government's arguments first because they raise threshold objections to our consideration of Appellant's claims.

### 2. *Law-of-the-Case Doctrine, Waiver, and the Authority of the District Court to Resentence on Remand*

It is worth noting at the outset that, as we explained in *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995), the law-of-the-case doctrine is "analytically distinct" from waiver and forfeiture. Further, as we explain below, waiver is distinct from forfeiture.

The Government argues that law-of-the-case doctrine bars Appellant's challenges to the issues he raises here because he could have raised them – but did not – in his initial appeal. The Government is mistaken.

"[T]he law of the case doctrine does not apply where an issue was not raised before the prior panel and thus was not decided by it." *Yesudian* ex rel. *U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001); *see also* 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (2d ed. 2002) ("Actual decision of an issue is required to establish the law of the case. Law of the case does not reach a matter that was not decided. As compared to claim preclusion, it is not enough that the matter could have been decided in earlier proceedings.").

In addition, even if Appellant had raised with the District Court before the first appeal the matters now at issue and that court had addressed them, this court would nevertheless be able to review them now. As the Supreme Court recently observed, "[t]he doctrine [of law of the case] may describe an appellate court's decision not to depart from a ruling, but it does not 'limit the court's power.'" *Musacchio v. United States*, 136 S. Ct. 706, 716 (2016) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

An appellate court's function *is* to revisit matters decided in the trial court. When an appellate court reviews a matter on which a party failed to object below, its review may well be constrained by other doctrines such as waiver, forfeiture, and estoppel, as well as by the type of challenge that it is evaluating. But it is not bound by district court rulings under the law-of-the-case doctrine.

*Musacchio*, 136 S. Ct. at 716 (emphasis in original).

Given that Appellant's sentencing challenges here have not been previously decided by any court, let alone this one, law-of-the-case doctrine does not apply.

In an apparent effort to avoid this well-established doctrine, the Government looks to our decision in *United States v. Thomas*, 572 F.3d 945 (D.C. Cir. 2009). To the extent that *Thomas* may appear to be at odds with *Yesudian* and our en banc decision in *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996), *Yesudian* and *LaShawn* control. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011). And, in any event, the Supreme Court's decision in *Musacchio* puts the matter to rest. Law-of-the-case doctrine applies only to issues upon which decisions were actually rendered, and is inapposite where an issue merely went unraised.

The Government also argues that Appellant's drug quantity and enhancement challenges were "waived" when he failed to press two of them (quantity and role-in-the-offense) at his initial sentencing, or any of them in his initial appeal. The Government's understanding of *waiver* is wrong.

"The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17

n.1 (2017). "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)); *see also* EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 99 (3d ed. 2018). As the government does not contend that Appellant took steps we could reasonably understand as an intentional relinquishment of his quantity and enhancement challenges, Appellant never "waived" any of his claims in this case.

Nor did Appellant forfeit these claims. The challenges Appellant now raises would have been fruitless before *Eiland* vacated his CCE conviction, as that conviction had a statutory mandatory minimum sentence of life that could not have been reduced even had he argued and won on the issues now presented. *Compare* 21 U.S.C. § 848 (2012) (providing for a life sentence when two additional elements are satisfied), *with* Jury Verdict Form at 37, *Eiland*, S.A. 31 (special jury verdict finding Appellant guilty of those two elements). The Government's position that Appellant had reason to raise these issues on his initial appeal because success could have reduced his Guidelines sentence range is simply incorrect. So long as the CCE conviction was in place, no amount of Guidelines range reduction could have lowered Appellant's sentence below the statutory minimum of life. The Government does not dispute this.

Instead, the Government argues that Appellant had reason to raise his current sentencing challenges on his initial appeal because of the possibility they would become relevant if this court heeded his challenge to the CCE conviction. Our case law holds otherwise. S*ee, e.g.*, *United States v. Melgar-Hernandez*, 832 F.3d 261, 270 (D.C. Cir. 2016) (finding that a defendant could raise an argument made "newly relevant" by a retroactive

amendment to the Guidelines, and noting that to hold otherwise would "engender an incentive for defense lawyers to raise highly contingent objections in the district court, which would result in a waste of judicial resources in the long run"). Here, *Eiland* animated Appellant's present challenges by vacating the CCE conviction (and its attendant mandatory life sentence) that had temporarily rendered these challenges useless.

The same principle applies to the Government's argument that under *United States v. Wyche*, 741 F.3d 1284, 1294 & n.9 (D.C. Cir. 2014), the District Court could rely on undisputed facts in the 2007 PSR because Appellant did not challenge drug quantity or the supervisory-role enhancement at his initial sentencing. *Wyche* stated no such categorical rule. *Wyche* cites *United States v. Pinnick*, which merely observed that, "[u]nder *most circumstances*, a sentencing court may rely on undisputed facts in a presentence report to conclude that the defendant committed any extraneous acts offered as relevant conduct." 47 F.3d 434, 437 (D.C. Cir. 1995) (emphasis added). As we noted in *United States v. Saro*, 24 F.3d 283, 291 (D.C. Cir. 1994), there is no "categorical rule" barring plain error review of factual findings in presentence reports merely because they have not been the subject of a timely objection.

Indeed, *Wyche* itself allowed a formerly inert sentencing issue to be raised because changed circumstances had given that issue life. The case involved a defendant (Wyche) who argued, among other things, that because his initial sentencing had included a finding that he was responsible for 500 grams or more of cocaine base, and because the Government had not at that time attempted to demonstrate that he was responsible for *more than* 500 grams of cocaine base, the Government could not upon resentencing challenge the drug quantity finding. *Wyche*, 741 F.3d at 1293–94. This court observed that the Government's challenge was not precluded because, at the

time of Wyche's initial sentencing, "500 grams of cocaine base triggered the highest base offense level for cocaine base crimes," and, having established that Wyche was responsible for at least 500 grams, "the Government was not required to prove—and had no reason to argue—that Wyche was responsible for any amount of cocaine base *over* 500 grams." *Id.* (emphasis in original). Revisions to the Guidelines postdating the initial sentencing, however, changed the base offense level such that there were potential offense level increases tied to proof of quantities over 500 grams of cocaine base, which for the first time gave the Government reason to argue the issue. *Id.*

Finally, the Government argues that this court's remand for Appellant's resentencing did not authorize the District Court to reconsider drug quantity or either of the sentencing adjustments at issue here. In support of this claim, the Government cites *United States v. Blackson*, 709 F.3d 36 (D.C. Cir. 2013). That case enumerates the district court's "resentencing authorit[ies] under a remand order that . . . contains no express instructions regarding which issues the district court may consider." *Id.* at 40. However, *Blackson* makes it clear that when facing such a remand, "under *Whren*, the district court may also consider 'such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.'" *Id.* (quoting *United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997)). As explained above, *Eiland*'s vacatur of Appellant's CCE conviction made his present sentencing challenges newly relevant, thereby satisfying *Blackson*.

In sum, we reject the Government's threshold claims that seek to limit our review of Appellant's sentencing challenges. As we have explained, the Government's arguments are

seriously misguided and find no support in controlling precedent.

_____

In the ensuing analysis, we will address the parties' claims with respect to *The Firearm Enhancement, The Role-in-the-Offense Enhancement,* and *The Drug Quantity Findings.*

To the extent that the Government is asserting that Appellant forfeited his sentencing challenges, the issue is relevant only insofar as a forfeited challenge would be subject to plain error review. Even if plain error applied here, however, the outcome would be the same: As detailed below, Appellant's challenges to the firearm and role-in-the-offense enhancements are sustained because the District Court's application of those enhancements constituted plain error that affected Appellant's substantial rights and seriously affected the fairness of judicial proceedings. *See United States v. King-Gore*, 875 F.3d 1141, 1147 (D.C. Cir. 2017). Appellant's challenge to the drug quantity finding fails (regardless of the applicable standard of review) because the District Court's determination is sufficiently explained and supported by the record. *Wyche*, 741 F.3d at 1294 n.9 ("[W]e may affirm [a district] court's [drug] quantity finding 'on any ground supported in the record.'" (quoting *United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010))).

### 3. The Firearm Enhancement

The District Court imposed a two-point sentencing enhancement under Guidelines § 2D1.1(b)(1) for Appellant's possession of a firearm based on a postarrest search of Appellant's home that yielded licensed firearms, a glass vial with the odor of PCP, and several bottles of acetone, which can

be used to dilute PCP. "The applicability of a specific offense characteristic, such as section 2D1.1(b)(1), depends on whether the conduct at issue is 'relevant' to the offense of conviction." *United States v. Bell*, 795 F.3d 88, 105 (D.C. Cir. 2015) (quoting *United States v. Pellegrini*, 929 F.2d 55, 56 (2nd Cir. 1991)). To that end, courts have held that, before applying a firearms enhancement, "a nexus must be shown between the weapon and the criminal act." *United States v. Pineda*, 981 F.2d 569, 573 (1st Cir. 1992). The District Court plainly erred by imposing the enhancement because it made no factual finding as to any nexus between those firearms and Appellant's drug convictions, which related to heroin, cocaine, and cocaine base, as Appellant was acquitted of the PCP counts.

Instead, the District Court limited its factual finding justifying the enhancement to a statement that "Mr. Miller was in fact in possession of a firearm during this drug conspiracy." Transcript of Sentencing Hearing at 10, *United States v. Miller* (No. CR-04-379-2) (Dec. 20, 2016), A.A. 75. While we see no clear error in this finding, it merely identifies parallel conduct, and fails to articulate a nexus between the firearms and the offenses at issue. The Government's citation to Application Note 11 to Guidelines § 2D1.1 is unavailing. While Note 11 states that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense," that principle does not obviate the "nexus" requirement enunciated in *Pineda*. 981 F.2d at 573.

### 4.  *The Role-in-the-Offense Enhancement*

The District Court imposed a four-point sentencing enhancement under Guidelines § 3B1.1(a) for Appellant's role in the offense, finding that he "managed or supervised at least one participant who was criminally responsible for an offense in a criminal activity that involved five or more participants, or

was otherwise extensive." Transcript of Sentencing Hearing at 11, *United States v. Miller* (No. CR-04-379-2) (Dec. 20, 2016), A.A. 76. But Guidelines § 3B1.1(a)'s four-point enhancement applies only when the defendant "was an *organizer or leader* of a criminal activity that involved five or more participants or was otherwise extensive" (emphasis added). The District Court's finding that Appellant managed or supervised such activity instead tracks the language of Guidelines § 3B1.1(b), which says: "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." Because the District Court's factual finding as to Appellant's role justified at most a three-point enhancement, it plainly erred by imposing a four-point enhancement.

In reaching this conclusion, we mean to address only the misfit between the District Court's finding and its enhancement, not the evidentiary support for the finding as to Appellant's role.

### 5. *The Drug Quantity Findings*

"Under the Sentencing Guidelines, a district court determines a defendant's sentencing range by calculating the defendant's base offense level. A base offense level, in turn, is derived from a defendant's 'relevant conduct.' For drug offenses, 'relevant conduct' includes the quantity of drugs involved in the offense." *United States v. Burnett*, 827 F.3d 1108, 1120 (D.C. Cir. 2016).

At Appellant's resentencing, the District Court "agree[d] with Mr. Miller that it must make a reasonable foreseeability finding and determine the amount of drugs attributable to Mr. Miller." Transcript of Sentencing Hearing at 10, *United States v. Miller* (No. CR-04-379-2) (Dec. 20, 2016), A.A. 75. In so

doing, it "consider[ed] the conduct underlying the CCE conviction" and determined, based on "the testimony at trial and the evidence presented at trial," that Appellant was responsible for "the entire amount of drugs underlying" that conviction, *i.e.* "30 kilograms of heroin, 15 kilograms of cocaine, [and] five grams of crack." *Id.* at 9–10, A.A. 74–75. The District Court also explained its determination that Appellant had occupied a managerial role in the conspiracy, citing *Eiland*'s holding that there was sufficient evidence for a jury to rationally find that Appellant, in tandem with Gerald Eiland, managed Darius Ames and supervised Charles Brown and Tyrone and Timothy Thomas in various drug trafficking activities. As *Eiland* held, "[t]he government's evidence at trial showed that Eiland and Miller organized an extensive drug ring"; "[t]he evidence revealed a wide-ranging drug operation headed by Eiland and Miller"; and "Miller and Eiland were key participants in all of the [conspiracy's] acts, arranging for the purchase and distribution of cocaine, heroin, and crack." 738 F.3d at 344–45, 359.

Appellant advances several arguments to challenge the District Court's determination of drug quantity, none of which is persuasive.

Appellant first argues that *Eiland*'s vacatur of the CCE count for insufficient proof that he supervised a fifth person necessarily implies that he cannot be held responsible for the entire quantity of drugs the jury specially found connected to that now-vacated conviction. We disagree. Appellant need not have supervised another participant in the drug trafficking scheme in order to be deemed responsible for drug quantities tied to that participant. "In a drug conspiracy, the amount of drugs attributable to any one codefendant as 'relevant conduct' for guidelines purposes is limited to the reasonably foreseeable transactions in furtherance of that codefendant's 'jointly

undertaken criminal activity.'" *Wyche*, 741 F.3d at 1292 (quoting *United States v. Easter*, 553 F.3d 519, 523 (7th Cir. 2009)).

Appellant also suggests that the District Court's quantity finding is infirm because it simply relied on the jury's special finding of drug quantity that underlay the now-vacated CCE conviction. But as Appellant's counsel conceded at resentencing, the District Court could make the same finding as the jury verdict without relying on the jury verdict itself, and the District Court explicitly agreed with Appellant that it must make a finding as to the drug quantity reasonably foreseeable by and therefore attributable to him. It then made such a finding based on its own view of the evidence and testimony corroborating Appellant's managerial role, and cited to this court's holdings in *Eiland* to the same effect. We have no reason to question the District Court's determination that Appellant's and his co-defendants' reasonably foreseeable transactions involved 30 kilograms or more of heroin and 15 kilograms or more of cocaine.

Appellant next argues that the District Court failed to make individual findings regarding the drug quantity reasonably foreseeable to him. Appellant appears willing to countenance foreseeability as to only those drugs he was convicted of possessing, or for which there is evidence he personally handled or transferred. Appellant is mistaken in his view. As we held in *Wyche*:

> A court may rely "on evidence of a defendant's relationship to and involvement with the conspiracy in order to draw permissible inferences regarding" the scope of his agreement to the conspiratorial conduct "and the foreseeability of his coconspirators' conduct." *Thomas*, 114 F.3d at 260.

> If the defendant plays a managerial role in a drug conspiracy, coordinates drug distribution with other managers of the conspiracy and shares in the conspiracy's profits, he may be held responsible for the entire drug quantity attributable to the conspiracy during the time he was a participant.

*Wyche*, 741 F.3d at 1292–93. The District Court permissibly applied these principles here and concluded, based on its (as well as *Eiland*'s) assessment of the evidence of Appellant's managerial role, that Appellant was a manager of the conspiracy and responsible for the entire drug quantity underlying the vacated CCE conviction.

Finally, Appellant argues that the District Court did not adequately explain its reasoning for the drug quantity decision. We disagree. As we have explained above, the District Court took care to cite to the evidence and testimony upon which it relied, as well as to this court's detailed holdings in *Eiland*, to support its conclusion regarding Appellant's managerial role in the drug conspiracy. Based on its view of the record, the District Court found that the full drug quantity associated with Appellant's vacated CCE conviction could be attributed to him for the drug conspiracy count. That finding was sufficiently explained and supported by the record.

### III. CONCLUSION

For the reasons set forth above, we affirm the District Court's drug quantity calculation. We reverse and remand for resentencing the District Court's four-point enhancement for Appellant's role in the offense, the court's two-point firearm enhancement, and Appellant's sentence for the RICO conspiracy. We also vacate the clerical errors in the judgment on Counts Two and Five, and remand these matters for correction by the District Court.

*So ordered.*