# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 14, 2021  Decided December 28, 2021

No. 20-3013

UNITED STATES OF AMERICA,
APPELLEE

v.

XAVIER JAMAAL ORANGE,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cr-00119-1)

---

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam, Jr.,* Assistant Federal Public Defender, entered an appearance.

*Bryan H. Han*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: KATSAS and RAO, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

Rao, *Circuit Judge*: Xavier Orange pleaded guilty to two violations of 18 U.S.C. § 922(g)(1), which prohibits certain felons from possessing firearms, and was sentenced to 57 months of imprisonment. Orange argues on appeal that his attorney was ineffective at his sentencing hearing, depriving him of his Sixth Amendment right to counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). The record from the hearing, however, makes clear that irrespective of any alleged deficiencies in representation, the district court would have imposed the same sentence. Because Orange has not demonstrated prejudice, his ineffective assistance of counsel claim fails.

I.

Early one morning, Orange was riding in the back seat of a car in Northeast Washington, D.C. The car was stopped by the United States Park Police, who noticed Orange had an open bottle of liquor in his lap. After arresting Orange, the Park Police discovered a loaded Sig Sauer pistol in his pocket. Because Orange had previously been convicted in the District of Columbia of attempted assault with a dangerous weapon and of attempted robbery, it was unlawful for him to possess a firearm. 18 U.S.C. § 922(g)(1); *see* D.C. Code §§ 22-1803, 23-1331(4) (2001). A grand jury charged him with violating Section 922(g)(1).

One week after his arrest, Park Police officers went to an apartment they believed was Orange's. They found a loaded .45 caliber Glock pistol in the kitchen. In the bedroom, they discovered a .45 caliber extended magazine, alongside four other handgun magazines, over a hundred rounds of ammunition, and drug paraphernalia. Next to the magazines and ammunition, they also found court documents in Orange's name and mail addressed to him. There was no indication that

anyone else lived in the apartment. After forensic testing identified Orange's DNA on the Glock, he was charged with a second violation of Section 922(g)(1).

Orange pleaded guilty, admitting possession of both the Sig Sauer and Glock pistols. At the time of his guilty plea, the government calculated that the appropriate sentence under the Sentencing Guidelines was 21 to 27 months of imprisonment. In exchange for Orange's guilty plea, the prosecution agreed to request the shortest sentence within that range and to request that he be permitted to serve his sentences concurrently. Orange acknowledged, however, that the plea agreement was "not binding on the Probation Office or the Court" and that the probation officer was free to request, and the court was free to assess, a harsher sentence. Orange waived the right to appeal his sentence but retained the right to bring ineffective assistance of counsel claims.

Unfortunately for Orange, his probation officer proposed a higher Guidelines range than the government had calculated. First, according to the presentence report ("PSR"), the Sig Sauer discovered in Orange's pocket at the traffic stop had an obliterated serial number, resulting in a four level enhancement. Second, the PSR noted that Orange's .45 caliber Glock was "capable of accepting [the] large capacity magazine" discovered in the bedroom, which increased his base offense level. These adjustments resulted in a recommended sentence of 57 to 71 months. Orange objected, insisting he had never admitted that the Sig Sauer's serial number was obliterated or that he possessed a large capacity magazine that his Glock could accept. The government agreed with Orange that the proper Guidelines recommendation remained 21 to 27 months.

At a pre-sentencing conference, the district court sua sponte flagged another issue. Relying on *United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018) (per curiam), the court asked the parties to determine whether Orange's prior conviction for attempted assault with a dangerous weapon was a "crime of violence" under the Guidelines.

At Orange's sentencing, the court quickly disposed of two of the three outstanding issues. First, after reviewing the evidence, his attorney and the prosecution agreed the serial number on his Sig Sauer was not obliterated. Second, Orange's attorney conceded that attempted assault with a dangerous weapon was a crime of violence under the Guidelines.

The parties disputed the PSR's extended magazine recommendation. Orange insisted that the apartment the officers searched was not his; the .45 caliber extended magazine discovered in the bedroom was not his; and, even if it were, it had not been in "close proximity" to the .45 caliber Glock found in the kitchen, as required by the Guidelines. Based on the testimony of the officer who searched the apartment, the district court determined that "[b]y far, the most plausible conclusion" was that Orange owned the extended .45 caliber magazine. After all, it was located in a small apartment, next to his mail and court documents, and one room away from a .45 caliber handgun with his DNA on it. The court further found that Orange's extended magazine was in "close proximity" to his Glock and increased his offense level accordingly.

These findings placed Orange's recommended sentence at 46 to 57 months of imprisonment. After considering the sentencing factors of 18 U.S.C. § 3553(a)—including the seriousness of Orange's offense, his prior gun-related convictions, and the need to protect the public—the court

handed down two 57 month sentences, to be served concurrently, followed by three years of supervised release. The court stipulated that "if I'm wrong about the guideline range, I would still vary upwards to give you this sentence." Orange timely appealed, claiming his attorney was ineffective at sentencing.

## II.

Orange argues his attorney made two errors at sentencing. First, he contends his attorney should have realized that, as a matter of law, a conviction in the District of Columbia for attempted assault with a dangerous weapon is not a "crime of violence" under the Guidelines. Second, he maintains that the testifying officer never suggested the .45 caliber Glock was "capable of accepting" the extended .45 caliber magazine, and that no other evidence adduced at sentencing suggested the magazine fit the gun. An effective attorney, Orange argues, would not have conceded that attempted assault with a dangerous weapon was a crime of violence and would have recognized that the extended magazine finding lacked evidentiary support.

To succeed on his ineffective assistance claim, Orange must demonstrate (1) that his attorney's conduct at sentencing "fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Although we often remand "colorable" ineffective assistance claims raised on direct appeal "for further factual development," a remand is unnecessary if "the record clearly shows that the defendant was not prejudiced." *United States v. Sitzmann*, 893 F.3d 811, 831–32 (D.C. Cir. 2018) (per curiam) (cleaned up); *see also United States v. Marshall*, 946 F.3d 591, 596 (D.C. Cir. 2020). In this

case, we need not consider the merits of Orange's deficient performance allegations, because the record clearly shows that he did not suffer prejudice, i.e., a "reasonable probability … that [his] prison term would not have been as long" if his attorney had represented him effectively. *United States v. Murray*, 897 F.3d 298, 312 (D.C. Cir. 2018) (cleaned up); *see also United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004).

Orange contends he was prejudiced because, if his attorney had been competent, the court would have arrived at a Guidelines range of 21 to 27 months; instead, it found that the proper range was 46 to 57 months. The difference between the two, he argues, suggests a reasonable probability of a more lenient sentence.

The Supreme Court has explained that in "most cases" when a defendant shows that, but for his attorney's deficient performance, the court would have selected a lower Guidelines range, he will have "demonstrated [the] reasonable probability of a different outcome" that *Strickland* requires. *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). Although the Guidelines are not binding, they serve as the "initial benchmark" and "framework for sentencing." *Id.* at 198. Absent some other indication from the record, a reviewing court may therefore fairly assume that an errant Guidelines calculation worked to the defendant's prejudice. Yet because sentencing calculations must turn on individualized considerations, in some cases the district court may explicitly rely on reasons not directly connected to the Guidelines range. Where the "record in a case show[s] … that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range," and where it gave a "detailed explanation of the reasons the selected sentence is appropriate," such explanations may undercut any inference of prejudice from an incorrect Guidelines calculation. *Id.* at 200.

At Orange's sentencing, the court calculated a Guidelines range of 46 to 57 months and imposed a sentence at the top of that range. The court stated it would have reached the same result irrespective of the Guidelines:

> I'm going to sentence you to within what I believe is a properly calculated guideline range; however, I want to make clear that if I'm wrong about the guideline range, I would still vary upwards to give you this sentence in light of all of the foregoing factors, but particularly given that this is now your third weapons related conviction and that you possess[ed] such an array of weapons and ammunition in this case.
>
> I believe your past conduct, in combination [with] the instant offense, necessitates [a] significant sentence to protect the community from your future crimes. Anything less than [the] sentence I'm imposing would not be sufficient to comply with the purposes of sentencing.

The district court also provided "a detailed explanation of the reasons the selected sentence [was] appropriate." *Molina-Martinez*, 578 U.S. at 200. It explained that Orange was a "a very dangerous person"—"a gunslinger" who was "heavily armed," with an "arsenal" of weapons in his home. This was Orange's third gun-related offense. He had previously pointed a loaded handgun at an unsuspecting Lyft driver, threatening to shoot him, and attempted to rob a pedestrian with a BB gun disguised to resemble a pistol. His lenient punishments for those earlier offenses had not deterred his "apparent habit of threatening others with firearms." That Orange twice violated Section 922(g)(1) while on supervised release indicated a "callousness to the rule of law." The court's reasons make

"clear" that it "based the sentence" at least in part "on factors independent of the Guidelines." *Id*.

Orange protests that the district court's analysis was not wholly independent of the Guidelines, since it ultimately selected a sentence within the calculated range. *Molina-Martinez*, however, does not require the government to show that the court's decision was *completely* independent of the Guidelines—only that the court explained why the sentence was "appropriate irrespective of the Guidelines range." *Id.* When the court offers such an explanation, as it did in this case, an incorrect Guidelines range will not suffice to demonstrate prejudice. Aside from the court's alleged Guidelines error, Orange offers no reason to suppose that he would have received a lesser sentence had his attorney raised the legal and evidentiary objections described above.

Orange also attempts to rely on *United States v. Parks*, 995 F.3d 241 (D.C. Cir. 2021). In that case, he argues, we found prejudice even though the district court implied it chose the defendant's sentence without relying on the Guidelines. *Parks*, however, is easily distinguished because the record there was "'silent' as to what the District Court would have done had it 'considered the correct Guidelines range.'" *Id.* at 247 (quoting *Molina-Martinez*, 578 U.S. at 201). In this case, the record is not silent, and we can readily conclude that the court would have imposed the same sentence irrespective of the Guidelines.

Finally, Orange argues the district court's sentence would not have survived direct appellate review, because the court failed to justify the degree of variance between the 57 month sentence imposed and the 21 to 27 month recommended sentence which, if his attorney had been competent, the court would have had to consider. Orange, however, waived the right to appeal his sentence directly, so whether the court's sentence

would pass muster on direct review is not the relevant question. In *Parks*, the absence of *any* reason for an upward departure from the correct Guidelines range "further supported" a finding of prejudice. *Id.* at 248. But we did not hold in *Parks*—and never have held—that the ordinary standard of review for an upward sentencing variance applies in ineffective assistance cases. If a district court explains that its sentence does not depend on the Guidelines and gives "reasons the selected sentence is appropriate," *Molina-Martinez*, 578 U.S. at 200, we do not further inquire whether, on a hypothetical direct appeal, those reasons would have supported an upward variance.

Under *Strickland*, the relevant question is whether Orange has shown a reasonable probability that he would have received a shorter sentence had his attorney been effective. We fail to see such a reasonable probability in this case.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered*.