# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 9, 2021         Decided May 31, 2021

No. 20-3084

UNITED STATES OF AMERICA,
APPELLEE

v.

FREDERICK A. MILLER, ALSO KNOWN AS TOBY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:04-cr-00379-2)

*Dennis M. Hart*, appointed by the court, argued the case and filed the briefs for appellant.

*Anne Y. Park*, Assistant U.S. Attorney, argued the case for appellee. With her on the brief were *Chrisellen R. Kolb* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: HENDERSON and PILLARD, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Frederick Miller (Miller) was convicted of drug conspiracy-related charges after two trials and three appeals. After our most recent remand for a second resentencing, the district court applied an upward variance and imposed a life sentence. Miller now argues that the district court exceeded the scope of its resentencing mandate and committed procedural and substantive errors in imposing the life sentence. We disagree and therefore affirm Miller's life sentence. In addition, we remand for the correction of several clerical errors in the judgment.

## I. BACKGROUND

We have described the full history of Miller's prosecution in his previous appeals, *see United States v. Miller*, 738 F.3d 361 (D.C. Cir. 2013) (*Miller I*); *United States v. Eiland*, 738 F.3d 338 (D.C. Cir. 2013); *United States v. Miller*, 890 F.3d 317 (D.C. Cir. 2018) (*Miller II*), and thus we limit our discussion to the facts relevant to this appeal.

Miller and Gerald Eiland (Eiland) headed a massive interstate drug trafficking ring focused in the Washington, D.C. area. *Eiland*, 738 F.3d at 344–45. Although the conspiracy began in 1999, *id.*, it is unclear exactly when Miller joined it. The indictment alleges that Miller joined the conspiracy "sometime around the year 2000." Appendix (App.) 105.

At the latest resentencing on review here, the district court, relying on testimony from the second trial, made several findings regarding the extent of the harm caused by the conspiracy. In June 1999, Eiland solicited Brian Lipscombe (Lipscombe)—a longtime drug dealer for Eiland—to kill Sorenson Oruchie (Oruchie), a heroin supplier to whom Eiland owed money. As Lipscombe testified, he agreed and shot Oruchie in the head. Oruchie survived.

On October 12, 2001, the police executed a search of Je Bradford's residence. Bradford supplied the conspiracy with distribution quantities of cocaine. As the police pounded on the door, Bradford called Eiland, who told Bradford that he would "take care of everything." Supplemental Appendix (S.A.) 183. Bradford then threw his cell phone against the wall, breaking it. As Bradford testified, Eiland later went to Bradford's residence to "destroy any cell phone that [Bradford] might have at the apartment and get rid of whatever evidence might be left." S.A. 187–88. Bradford was arrested and subsequently incarcerated at the Charles County (MD) Detention Center.

According to the professional visitor log for the Charles County Detention Center, a "Frederick Miller" from the "D.C. police" visited Bradford on January 1, 2002. S.A. 208. From 2002 until 2005 Miller had a private detective license issued by the District of Columbia Metropolitan Police Department (MPD). Bradford testified that he and Miller met in a private room for a "legal visit" because Miller's license allowed him to visit an inmate without surveillance. S.A. 190–91. Bradford and Miller concluded that a particular associate had turned on Bradford. According to Bradford, Miller said that "it's not fair that you won't be able . . . to see your son grow up, . . . so [the associate] won't be able to see his son grow up." S.A. 197. Miller also said that he knew where the associate went for his weekly bowling league and where he played with his son. As Bradford explained, Miller "was going to kill him." S.A. 198.

Sometime in 2003, the FBI began investigating, including surveilling, the Eiland/Miller drug trafficking ring. *Eiland*, 738 F.3d at 345. At the second trial (regarding Eiland, Miller and two associates), an FBI agent testified that he investigated "drug trafficking that was occurring in the area of 9th and Wahler Place, Southeast, . . . up around Draper Elementary School." S.A. 111. Draper Elementary School was at 908

Wahler Place SE, at the intersection of 9th and Wahler Place. During the investigation, the FBI agent identified Eiland and Miller as drug traffickers. From wiretapping Miller's phone, the agent discovered the conspiracy used a residence on the "3800 block of 9th Street, Southeast"—near Draper Elementary School—for meetings related to the drug conspiracy. *See* S.A. 115–16, 124. There, Eiland fronted street-level dealers thousands of bags of "Spider Man"—a type of heroin—with "[l]ittle dolphin shapes, designs" on each bag. S.A. 129–30, 136. Several street dealers also sold heroin near the school. Indeed, one dealer was arrested on 9th Street with "[77] bags of [heroin] with blue dolphin markings on them," 47 bags of cocaine base and 598 "Ziplocs" of opiates. S.A. 143–45.

The government arrested Eiland and Miller in August 2004. *Eiland*, 738 F.3d at 345. Miller was charged with various crimes related to distributing heroin, cocaine, crack and phencyclidine (PCP). *Id.*[1] The first jury convicted Miller on 21

---

[1] The following counts were alleged against Miller in the final superseding indictment before the first trial: count 1 alleged a narcotics conspiracy in violation of 21 U.S.C. § 846; count 2 alleged a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d); count 3 alleged a continuing criminal enterprise in violation of 21 U.S.C. § 848(a)–(b); counts 4–7 alleged unlawful possession with intent to distribute PCP in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; count 8 alleged unlawful attempted possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2; count 9 alleged unlawful use of a communication facility under 21 U.S.C. § 843(b) and 18 U.S.C. § 2; counts 11–41 and 43–62 alleged unlawful use of a communication facility in violation of 21 U.S.C. § 843(b); count 68 alleged conspiracy to commit first-degree murder in violation of 22 D.C. Code §§ 1805a, 2101; count 69 alleged conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959. Retyped Superseding Indictment, *United States v. Eiland*, Cr. No.

counts, acquitted him on others and hung on the remaining counts. *Id.*[2] The district court retried Miller, *id.*, and the second jury found Miller guilty on the counts alleging narcotics conspiracy, RICO conspiracy, continuing criminal enterprise, heroin distribution and three counts alleging unlawful use of a communication facility, *id.* at 346.[3] The district court sentenced Miller to life imprisonment on both the RICO conspiracy and continuing criminal enterprise counts. *Id.* Miller then appealed, challenging the procedures and sufficiency of evidence from both trials. From the first trial, we reversed Miller's convictions on counts 19, 20, 34, 40, 46 and 59 for procedural defects and

04-379 (D.D.C. Mar. 20, 2006), ECF No. 617. The remaining counts were alleged against Miller's codefendants only.

[2] The jury hung on counts 1–3 (conspiracy, RICO and continuing criminal enterprise), 7–9 (PCP distribution, heroin distribution and unlawful use of communication facility), 12–15, 46 and 48 (unlawful use of communication facility); found Miller guilty on 16–20, 22, 24, 30, 33–36, 38–41, 43, 49, 52–53 and 59 (unlawful use of communication facility); found Miller not guilty on count 6, 11, 21, 26–29, 44–45, 47, 50–51, 54, 57 and 60–62 (unlawful use of communication facility). Verdict Form, *United States v. Miller*, Cr. No. 04-379 (D.D.C. June 19, 2006), ECF No. 1036. During trial, the district court accepted a new superseding indictment that no longer alleged counts 4, 5, 23, 25, 31–32, 37, 55–56, 58, 68 and 69 against Miller. Retyped Indictment, *United States v. Eiland*, Cr. No. 04-379 (D.D.C. May 24, 2006), ECF No. 671.

[3] Before the second trial, the government filed a new indictment that renumbered and added counts. Retyped Indictment, *United States v. Eiland*, Cr. No. 04-379 (D.D.C. Oct. 11, 2006), ECF No. 804. The second jury found Miller guilty on counts 1, 2, 3 (conspiracy, RICO and continuing criminal enterprise), 5 (heroin distribution), 6, 27 and 28 (unlawful use of communication facility) and not guilty on counts 4 (PCP distribution), 8–11 and 15 (five unlawful use of communication facility counts). Verdict Form, *United States v. Eiland*, Cr. No. 04-379 (D.D.C. Dec. 5, 2006), ECF No. 904.

otherwise affirmed. *See Miller I*, 738 F.3d at 367–68, 387. From the second trial, we found insufficient evidence for the continuing criminal enterprise charge, count 3. *Eiland*, 738 F.3d at 357–58.[4] We remanded for Miller's first resentencing and the district court again sentenced Miller to life imprisonment on the RICO conspiracy charge and determinate sentences on the other 21 counts.[5] Miller appealed.

On appeal from Miller's first resentencing, we concluded that the district court had erred. First, the district court committed "clear error" in finding the Sentencing Guidelines[6] range for the RICO conspiracy charge to be mandatory life imprisonment. *Miller II*, 890 F.3d at 324–25. The panel "therefore vacate[d] Appellant's life sentence on the RICO conspiracy count and remand[ed] to the District Court with instructions to resentence Appellant on the RICO conspiracy count in light of the correct Guidelines range of 360 months to life." *Id.* at 325. The district court made several "clerical errors" in describing the counts. *Id.* And it "plainly erred by imposing the [firearm] enhancement because it made no factual finding as to any nexus between those firearms and Appellant's

---

[4] At sentencing, the district court vacated count 1 as a lesser included offense of count 3. *United States v. Eiland*, 738 F.3d 338, 359, 361 (D.C. Cir. 2013). Because we vacated count 3, we reinstated count 1. *Id.*

[5] Under the new numbering system, the district court sentenced Miller on counts 1 (conspiracy to distribute narcotics), 2 (RICO conspiracy), 5 (heroin distribution), 6, 16–18, 22, 24, 27–28, 30, 33, 35–36, 38, 39, 41, 43, 49 and 52–53 (unlawful use of communication facility).

[6] The Sentencing Guidelines are issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a) to be used in determining appropriate criminal sentences to further the purposes of deterrence, incapacitation, just punishment and rehabilitation. U.S. Sent'g Guidelines Manual ch. 1, pt. A Subpt. 1.

drug convictions." *Id.* at 328. Finally, the court misapplied the "organizer or leader" enhancement after it had found that Miller managed or supervised "at least one participant" only. *Id.* at 329. Under the Guidelines, "the District Court's factual finding as to Appellant's role justified at most a three-point enhancement, [thus, it] plainly erred by imposing a four-point enhancement." *Id.*

We remanded for a second resentencing. In *Miller II*'s operative conclusion, we stated: "We reverse and remand for resentencing the District Court's four-point enhancement for Appellant's role in the offense, the court's two-point firearm enhancement, and Appellant's sentence for the RICO conspiracy. We also vacate the clerical errors in the judgment on Counts Two and Five, and remand these matters for correction by the District Court." *Id.* at 331.

In district court, both Miller and the government submitted motions regarding the factual predicates for the role-in-the-offense and firearm enhancements. The government argued for enhancements that would have resulted in a Guidelines range with an upper range of life imprisonment and urged the district court to impose life imprisonment. One week before resentencing, however, the government filed a memorandum, stating that it no longer sought both the firearm enhancement and the four-point organizer-or-leader enhancement. The parties therefore did not dispute the proper offense level under the Guidelines. *See* App. 237 (government and defendant agree on enhancements with total offense level of 39 and Guideline range of 262 to 327). Instead, for the first time, the government argued for an upward variance. Relying in part on information from Miller's 2007 Presentence Investigation Report, the government argued for an upward variance given the Eiland/Miller conspiracy's unusually violent conduct and Miller's earlier arrests. Miller opposed the upward variance.

At the hearing, the government explained why it had not theretofore asked for an upward variance. "[A]t the time of the original sentencing in this case, because [Miller] was given a mandatory life sentence—I don't think that then defense counsel or the Court were really focused on [the facts supporting an upward variance] too much." App. 229; *see also* App. 232 ("The original PSR, presentence report, indicates that there is no reason for an upward variance. But again, at that point, the parties and the Court [we]re under the impression that we were dealing with a mandatory life sentence; there was no reason to look for a variance."). Defense counsel emphasized that the government first argued for an upward variance only one week before the second resentencing but did not request a continuance.

The district court sentenced Miller to life imprisonment. It concluded that a sentence within the Sentencing Guidelines range did not reflect the seriousness of Miller's crimes or act as a sufficient deterrence. It offered several reasons for an upward variance. First, Miller had a long history of arrests for violent crimes and drug offenses. Because Miller had not been convicted of these offenses, however, the court calculated Miller's criminal history category under the Guidelines as 1, the lowest category. The court instead considered the past arrests as supporting an upward variance. Second, the court concluded that the conspiracy had obstructed justice based on the evidence that Eiland had destroyed evidence at Bradford's home. *See supra* at 3. Third, the court found the drug conspiracy unusually harmful to the community: "Miller caused harm beyond his conduct dealing narcotics" and the conspiracy "brought destruction on much of Southeast, Washington, D.C." App. 242–43. "People like Mr. Oruchie were grievously injured as a result of the conspiracy." App. 243. Fourth, Miller abused his private investigator credentials to gain an unsupervised visit with Bradford in prison in an

effort to influence his testimony, including by credibly suggesting he would kill the man he thought informed on Bradford. Finally, Miller's conspiracy engaged in dangerous conduct (i.e., drug dealing) near a school, Draper Elementary School. Miller timely appealed.

## II.  ANALYSIS

We typically review the scope of a remand for resentencing *de novo*. *United States v. Hunter*, 809 F.3d 677, 681 (D.C. Cir. 2016). But where—as here—the defendant fails to object at his sentencing hearing—having had the opportunity to object—"the more demanding plain error standard of review applies." *Id.* at 682 (quoting *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011). Plain-error review has four elements. *Puckett v. United States*, 556 U.S. 129, 135 (2009). First, there must be a legal error the appellant did not "affirmatively waive[]." *Id.* "Second, the legal error must be clear or obvious, rather than subject to reasonable dispute." *Id.* Third, the legal error "must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings." *Id.* (citation and internal quotation marks omitted). Fourth, the appellate court typically remedies any plain error "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).[7]

---

[7] Miller argues that the district court commits *per se* plain error whenever it violates the mandate rule. As Miller notes, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court," *Briggs v. Pennsylvania. R. Co.*, 334 U.S. 304, 306 (1948), and "[a] district court commits legal error and therefore abuses its discretion when it fails to abide by the . . . mandate rule," *United States v. Kpodi*, 888 F.3d 486, 491 (D.C. Cir. 2018). True

We review a criminal sentence for abuse of discretion and apply a two-step review process. *Gall v. United States*, 552 U.S. 38, 51 (2007). First, we consider whether the district court committed a "significant procedural error," such as improperly calculating the Sentencing Guidelines range or relying on clearly erroneous facts. *Id.* We review a sentencing court's factual determinations for clear error. *See United States v. Ventura*, 650 F.3d 746, 749 (D.C. Cir. 2011).[8]

Second, we consider "the substantive reasonableness of the sentence" under the "abuse-of-discretion" standard, considering the "totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Regardless whether the defendant objected to the substantive reasonableness of the sentence, we review for abuse of discretion, as the defendant need not "re-object" to a sentence's substantive reasonableness once his original submission regarding substantive reasonableness is made and rejected. *See United States v. Burroughs*, 613 F.3d 233, 241

---

enough. But plain error review requires more—that the district court not simply committed legal error but a "clear or obvious" legal error not "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

[8] As the government notes, ordinarily, "where a defendant fails to raise a claim at his sentencing hearing, we review for plain error only." *United States v. Hunter*, 809 F.3d 677, 681 (D.C. Cir. 2016) (citation and internal quotation marks omitted); *see* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). But according to the Supreme Court, the clear error standard has long applied to judicial fact-finding in criminal cases, even to findings that "hav[e] nothing to do with guilt." *Maine v. Taylor*, 477 U.S. 131, 145 (1986); *see also In re Sealed Case*, 552 F.3d 841, 849–51 (D.C. Cir. 2009) (Edwards, J., concurring statement). Notwithstanding Miller failed to object at the criminal sentencing hearing, then, we review the factual findings for clear error.

(D.C. Cir. 2010). "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008). Because the Guidelines are advisory only, we do not require a heightened showing of "reasonableness" if a district court imposes an above-Guidelines sentence. *Id.* at 1092–93.

## A. The Mandate Rule

Miller argues that the district court exceeded its mandate on remand. In *Miller II*, we "reverse[d] and remand[ed] for resentencing the District Court's four-point enhancement for Appellant's role in the offense, the court's two-point firearm enhancement, and Appellant's sentence for the RICO conspiracy." 890 F. 3d at 331. According to Miller, we remanded only for the limited purpose of making factual findings for the organizer-or-leader and firearm enhancements. Even assuming *arguendo* that we remanded for fact-finding, however, we think that the district court properly reached the newly relevant issue of whether to apply an upward variance.

Under the mandate rule, "an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pennsylvania. R. Co.*, 334 U.S. 304, 306 (1948). If we remand to a district court without "express instructions regarding which issues the district court may consider" at resentencing, the district court may consider only defined "categories of inquiry." *See United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013) ("collecting in one place this circuit's rules regarding the scope of a district court's resentencing authority under a remand order"). In *United States v. Whren* we said that "upon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider . . . such new arguments or new

facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result." 111 F.3d 956, 960 (D.C. Cir. 1997). For *Whren* to apply, then, the appellate decision must not "expressly" forbid the district court from considering new arguments but any new argument must be "newly relevant."

*Miller II* did not expressly prohibit the district court from considering new arguments. Granted, Miller argues that we remanded for the district court to consider only whether factual predicates existed for the two enhancements described *supra*. But, even assuming Miller is correct, *Whren* requires only that we do not *expressly* direct the district court not to consider newly relevant arguments for those arguments to be precluded. 111 F.3d at 960. And *Miller II* did *not* expressly limit the district court's remit—we simply remanded for resentencing on several issues. 890 F.3d at 331. For "express" instructions, we generally require "more specific remand instructions" than the typical remand instruction. *See Blackson*, 709 F.3d at 43.

We believe *Miller II* also made the question of an upward variance "newly relevant." In the two earlier sentencings, the government had argued that the court should impose life imprisonment under the Sentencing Guidelines range. Thus, it had no reason to argue that the district court should impose an upward variance—the district court could not have imposed an upward variance from life imprisonment. *See United States v. McCoy*, 313 F.3d 561, 564, 566 (D.C. Cir. 2002) (en banc) (*Whren* applies to issues "which never became determinative before the district court" or "for which the likelihood of any significance is remote[, as] an absolute requirement to raise all objections (regardless of the degree of relevance) is likely both to waste judicial resources and work injustice"). Once *Miller II* held that the insufficient evidence for the firearm and organizer-or-leader enhancements required remand, however,

the upward variance became "newly relevant" because, without the vacated enhancements, the government could no longer argue for life imprisonment under the Guidelines.

Even if the government should have argued for an upward variance as an alternative ground for sentencing Miller to life imprisonment at the previous sentencings, *Whren* would still apply because the district court can apply an upward variance *sua sponte* without notice. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008). Because the district court had sentenced Miller to life imprisonment under the Guidelines at both the original sentencing and the first resentencing, it necessarily did not consider whether to apply an upward variance. But, at the second resentencing—the sentencing *sub judice*—the district court, for the first time, concluded that the applicable Sentencing Guidelines range did not include life imprisonment. It therefore became "newly relevant" whether to apply an upward variance.[9]

## B. Alleged Procedural Errors

Miller first argues that the district court committed a "significant procedural error" because Miller lacked sufficient time to review the grounds for the upward variances. But even assuming that a lack of proper notice would constitute a

---

[9] The district court may sentence a defendant under the Guidelines and, alternatively, recite that, if the Guidelines range is incorrectly calculated, it would have instead applied an upward variance and imposed the same sentence. *See United States v. Orange*, 21 F.4th 162, 166 (D.C. Cir. 2021) (district court calculated Guidelines range and explained "if I'm wrong about the guideline range, I would still vary upwards to give you this sentence"); *but see also United States v. Booker,* 436 F.3d 238, 247 (D.C. Cir. 2006) (district court cannot issue alternative judgments with different sentences).

significant procedural error, *cf. Gall*, 552 U.S. at 51 ("significant procedural error[s]" include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"), Miller lacked any right to notice of the grounds of the upward variance under either the Federal Rules of Criminal Procedure or the Due Process Clause.

The Federal Rules of Criminal Procedure provide no right to notice of the grounds of an upward variance. After the Supreme Court interpreted Rule 32 to provide a right to notice before a court departs from the Sentencing Guidelines, *Burns v. United States*, 501 U.S. 129, 135 (1991), the Congress repealed the relevant part of Rule 32 and clarified that courts must provide notice only before imposing an upward departure:

> **(h) Notice of Possible Departure from Sentencing Guidelines.** Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Notably, Rule 32(h) applies to a "departure" (a deviation from Guidelines range based on Guidelines policy). As the Supreme Court has explained, Rule 32 does not apply to "variances" (sentences outside the Guidelines range based on the statutory sentencing factors, *see* 18 U.S.C. § 3553(a)). *Irizarry*, 553 U.S. at 714. Here the district court applied an upward variance based

on the statutory sentencing factors, meaning that Miller had no right to notice of the grounds thereof.

The Supreme Court has also explained that the right to due process does not require a sentencing court to grant notice before imposing an upward variance. It explained that "[t]he due process concerns that motivated the Court to require notice in a world of mandatory Guidelines no longer provide a basis for" a due process right to notice after the Court decided *United States v. Booker*, 543 U.S. 220 (2005). *Irizarry*, 553 U.S. at 714. "Now faced with advisory Guidelines," the Court explained, the "special need" for a notice requirement before deviating no longer applies. *Id.* at 713–14. Instead the Supreme Court and this court have said that a defendant may request a continuance if he needs time to rebut the grounds of an upward variance. *Id.* at 715–16; *United States v. Nicely*, 492 F. App'x 119, 122 (D.C. Cir. 2012).

Miller also appears to argue that the district court made several clearly erroneous findings in determining bases for the upward variance. *See Gall*, 552 U.S. at 51 ("significant procedural error[s]" include "selecting a sentence based on clearly erroneous facts"). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). As the Seventh Circuit has put it, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

Miller challenges several factual findings that are not close to "clearly erroneous." For example, Miller argues that the district court could not rely on Bradford's testimony because he identified Miller as "Corey." Even if Bradford heard Eiland on the phone refer to Miller as "Corey"—and the record suggests that Bradford might not have heard him correctly, *see* App. 271—the district court could nonetheless reasonably determine that Bradford in court correctly pointed out Miller as his prison visitor. App. 273 "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 573–74.

We address at length the only challenge that warrants discussion: whether the district court erroneously found that Miller was a member of the drug conspiracy when Eiland paid Lipscombe to kill Oruchie. At trial, Lipscombe testified that Eiland paid him to kill Oruchie. Lipscombe, in exchange for $10,000 and a used Acura, shot Oruchie in the head and told Eiland that Oruchie had died. Miller argues that he could not have yet joined the conspiracy because Lipscombe testified that he attempted to kill Oruchie "[i]n June of, approximately June, of 1999," App. 275, and Miller was incarcerated until sometime in June 1999. Based on this untidy chronology—and, indeed, the lack of any other evidence suggesting that Miller knew about the attempted murder of Oruchie—Miller might have a point.

Nonetheless, Miller challenges a finding the district court did not make. The district court found "it more likely than not that Mr. Eiland paid Mr. Lipscombe to murder one of his heroin suppliers, Sorenson Oruchie." App. 241–42. In setting out the reasons to apply an upward variance, however, the district

court found that the conspiracy harmed people beyond drug users, only once mentioning Oruchie as an example:

> [Miller's] actions brought destruction on much of Southeast, Washington, D.C. In dealing drugs across the street from an elementary school, the conspirators harmed the entire community; they exposed young children to the risk of violence, and disrupted their education. This was not just a conspiracy to harm drug users. Moreover, Mr. Miller caused harm beyond his conduct dealing narcotics. *People like Mr. Oruchie* were grievously injured as a result of the conspiracy that he co-led with his codefendant.

App. 242–43 (emphasis added). The district court cited the attempted murder of Oruchie as an example of the threat the conspiracy posed to an entire area of the District of Columbia. Indeed, several times it referred to the conspiracy's "destruction" of the Southeast community. *See* App. 244 (noting "harms [Miller] brought"); App. 245 (noting "conspiracy's violent conduct"). Because the district court did not punish Miller for the attempted murder of Oruchie, but instead merely cited it as an example of the kinds of harms that conspiracy caused, there was no error.

We also reject Miller's other claims of "significant" procedural error. First, the district court did not use the Guidelines as its basis for the upward variance. It explicitly applied the upward variance based on considerations required by 18 U.S.C. § 3553(a), including the "nature and circumstances" and "seriousness" of the crimes. *See, e.g.*, App. 244 ("[T]he guidelines d[o] not reflect the seriousness of the offense with respect to the conspirator's violent conduct, the

efforts to obstruct justice, and the impact on school children."). "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). Second, the district court can rely on hearsay as evidence for its findings. *United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). Third and finally, the district court appropriately considered illegal conduct the government declined to prosecute. *United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").[10]

## C. The Alleged "Substantively Unreasonable" Sentence

Miller argues that the district court imposed a substantively unreasonable sentence. It is "an unusual case" in which the district court imposes such an "unreasonably high or low" sentence to warrant reversal for substantive

---

[10] In reply, Miller argued for the first time that 18 U.S.C. § 3742(g)(2) bars the district court from imposing a sentence outside the Guidelines range on grounds the court did not include in the statement of reasons in the earlier sentencing. Because Miller did not make that argument in his opening brief, we do not consider it. *See, e.g.*, *United States v. Powers*, 885 F.3d 728, 734 (D.C. Cir. 2018).

unreasonableness. *Gardellini*, 545 F.3d at 1093, 1096. Contrary to Miller's protestations, this is not that case.

First, the district court distinguished this case from a typical case with the same underlying charges. *See United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) ("To sustain an upward variance, the district court . . . must state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." (cleaned up)). The district court gave several reasons that Miller caused greater-than-usual harm. *See, e.g.*, App. 244 ("[T]he guidelines d[o] not reflect the seriousness of the offense with respect to the conspirator's violent conduct, the efforts to obstruct justice, and the impact on school children.").

Further, the district court did not "incorrectly" give the same sentence to Eiland and Miller. It sentenced both Eiland and Miller to life imprisonment, notwithstanding Eiland was the conspiracy's "leader" and Miller the "manager." *See* U.S. Sent'g Guidelines Manual § 3B1.1 ("an organizer or leader" receives greater punishment than "a manager or supervisor"). Even if Eiland's and Miller's criminal conduct were identical save for their respective roles as "leader" and "manager," the district court could have reasonably determined that each deserved the most serious punishment available.

Moreover, the district court properly considered the purposes of criminal sentencing. *See* 18 U.S.C. § 3553(a)(2) (sentencing court must consider purposes of criminal punishment). Miller contends that the district court did not give sufficient weight to his rehabilitation while in prison. The district court, however, explicitly considered Miller's "good conduct while he has been in prison and his extensive efforts at vocational education in prison." App. 244. It nonetheless found

the life sentence necessary in order to impose a punishment severe enough to deter future crime. App. 244. Given the significant deference that we grant the district court regarding sentencing decisions, *Gardellini*, 545 F.3d at 1093, we find no abuse of discretion regarding the severity of the sentence.

Finally, we believe the district court made two clerical errors. The Amended Judgment describes count 5 as "Conspiracy and Attempted Possession with Intent to Distribute Heroin" but the verdict form refers to "Count 5: On or about April 16, 2004, attempt to possess with intent to distribute heroin." Although the Amended Judgment refers to the correct statute for count 5, *see* 21 U.S.C. § 841(a)(1) ("unlawful [to] possess with intent to . . . distribute . . . a controlled substance"), it should not have included the word "[c]onspiracy." Moreover, when pronouncing sentence, the court sentenced Miller to 48 months' imprisonment on count 22, as reflected in the Amended Judgment. The district court, however, had vacated and dismissed count 22 once it found Miller "not guilty of Count 15 . . . which charged the same substantive offense as the conduct charged in Count 22." Because the "pronouncement of the sentence constitutes the judgment of the court" and remains the judgment "until the first [judgment] shall be vacated and set aside or reversed on appeal or error," *United States v. Love*, 593 F.3d 1, 9 (D.C. Cir. 2010) (citations omitted), we direct the district court to correct the errors identified in this paragraph.

For the foregoing reasons, we affirm the district court's judgment but remand to the district court to correct the judgment in accordance with this opinion.

*So ordered.*